**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| BRYAN THOMAS, SHAWN MORRIS, and DARNELL COOPER, | ) | |
| Plaintiffs, | ) | No. 10 CV 560 |
| v. | ) | Honorable David H. Coar |
| THOMAS J. DART, in his official capacity; SALVADOR GODINEZ, in his official capacity; MARILYN MARTINEZ, in her official capacity; and COOK COUNTY, ILLINOIS, | ) | Jury Trial Demanded |
| Defendants. | ) | |

## FIRST AMENDED COMPLAINT

Plaintiffs Bryan Thomas, Shawn Morris, and Darnell Cooper (collectively, "Plaintiffs"), through their court-appointed counsel appearing pro bono publico in this case, state the following with personal knowledge as to themselves and on information and belief as to all other matters:

## JURISDICTION

1. This action arises under 42 U.S.C. § 1983, the First and Fourteenth Amendments to the Constitution of the United States, and 42 U.S.C. § 2000cc-1. This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343(a). This Court has supplemental jurisdiction over Plaintiffs' state law claim under 28 U.S.C. § 1367.

2. Venue is proper in this judicial district under 28 U.S.C. § 1391(b) because the events giving rise to Plaintiffs' claims occurred in Cook County, which is located in the Northern

District of Illinois.

## PARTIES

3. Plaintiff Bryan Thomas is a pretrial detainee who has been confined by the Cook County Department of Corrections ("CCDOC") in Division 10 of the Cook County Jail (or the "Jail"), where he is awaiting trial on criminal charges.

4. Plaintiff Shawn Morris is a pretrial detainee who has been confined by the CCDOC in Division 10 of the Cook County Jail, where he is awaiting trial on criminal charges.

5. Plaintiff Darnell Cooper is a pretrial detainee who has been confined by the CCDOC in Division 10 of the Cook County Jail, where he is awaiting trial on criminal charges.

6. At all times relevant to the allegations in this First Amended Complaint ("Complaint"), Defendant Thomas J. Dart was the Sheriff of Cook County. Defendant Dart is a policy making official of Cook County, with final decision-making authority over all policy, practices, and procedures for and affecting inmates and Cook County employees, including Sheriff's Office personnel, at the Jail. Defendant Dart is also responsible for ensuring compliance with the Sheriff's Office policies, practices, customs, and procedures, and therefore has a duty to monitor the activities that take place at the Jail, in order to ensure the effectiveness of and compliance with the Jail's policies, practices, customs, and procedures. Defendant Dart is the principal supervisor at the Jail. Defendant Dart is sued in his official capacity.

7. At all times relevant to the allegations in this Complaint, Defendant Salvador Godinez was the executive director of the Jail. As the Jail's chief executive officer, Defendant Godinez reports directly to Defendant Dart and is accountable for the direction and coordination of all CCDOC operations. Defendant Godinez supervises the Jail's budget, the management of

all Jail programs and activities, and, directly or indirectly, all Jail personnel. Defendant Godinez has responsibility for all policies, practices, and procedures for inmates and County employees, including Sheriff's Office personnel, at the Jail, and also for ensuring compliance with the Jail's policies, practices, customs, and procedures. Defendant Godinez is sued in his official capacity.

8. At all times relevant to the allegations in this Complaint, Defendant Marilyn Martinez was the Superintendent of Division 10 at the Jail. As Superintendent, Defendant Martinez has responsibility for assisting in the formulation, execution, and oversight of all policies, practices, and procedures for and affecting detainees and Cook County employees, including Sheriff's Office personnel, at Division 10. Defendant Martinez therefore has a duty to monitor the activities that take place at Division 10 to ensure the effectiveness of and compliance with the Jail's policies, practices, customs, and procedures. Defendant Martinez is sued in her official capacity.

9. Defendant Cook County, Illinois, is a public entity under the laws of the State of Illinois. One of Cook County's governmental subsidiaries is the CCDOC. Defendant Cook County operates the Jail. Defendant Cook County was the employer of Defendants Dart, Godinez, and Martinez at all times relevant to this complaint.

## FACTS

10. Plaintiffs are practicing Muslims. They adhere to the religion of Islam.

11. Upon arriving at the Jail, each Plaintiff identified himself as a practicing Muslim to Jail officials.

12. Islamic law governs which foods and other substances Muslims are permitted to consume. Islamic law also governs the manner in which animal meat must be slaughtered. Food

and other substances that are permissible for consumption, either as is or because they have been prepared in accordance with Islamic dietary codes, are commonly referred to as "halal," or lawful.

13. Due to their religious beliefs, Plaintiffs are prohibited from eating "haram" meat—meat that is not prepared in accordance with Islamic dietary codes. Therefore, Plaintiffs do not eat pork or knowingly eat pork products.

14. Kosher meat—meat slaughtered and prepared in accordance with Jewish law—is slaughtered in nearly the same manner as halal meat. Practicing Muslims may therefore consume kosher meat without offending the tenants of Islamic dietary codes.

15. Aramark Correctional Services, LLC, provides a range of food, facility, and other support to correctional facilities throughout North America, including the Jail. Upon information and belief, the food service program at the Jail is contracted to Aramark, which operates two kitchens, one located in the basement of Division 11 and a larger, central kitchen ("Central Kitchen"). References herein to the Central Kitchen refer to the facility within the Jail.

16. Defendants Dart, Godinez and Martinez have policy making authority over conditions of confinement, including food services and Aramark.

17. The Jail provides each detainee with meals according to his or her particular diet plan three times a day. Upon information and belief, before June of 2010 the following diets were available to detainees at the Jail: (1) kosher, (2) low-fat, (3) vegetarian, and (4) regular.

18. Upon information and belief, the Jail, at no time has provided Muslim detainees with a diet containing halal meat.

19. Upon information and belief, the Jail has provided other Muslim detainees, aside from Plaintiffs, with kosher meals, upon request, to provide Muslims with proper sustainable

meals that conform to Islamic dietary law.

20. Plaintiffs have repeatedly requested a kosher diet because the kosher manner of food preparation most closely adheres to Islamic dietary codes.

21. Plaintiff Bryan Thomas began requesting a kosher diet within weeks of being detained at the Jail on October 21, 2009. From November 2009 through February 2010, Mr. Thomas filed multiple requests, approximately sixteen grievances, and approximately three medical requests seeking a kosher diet.

22. Upon information and belief, several of Mr. Thomas' grievances were processed as "requests," a means of seeking redress that is not considered in the analysis of whether a detainee has exhausted the administrative remedies at the Jail.

23. On limited occasions, Mr. Thomas was provided with a kosher meal at one of the three daily meal times.

24. Mr. Thomas was not assigned a grievance control number until approximately his eleventh grievance, filed on December 31, 2009.

25. Mr. Thomas received a response to this grievance on January 15, 2010. The response noted that Mr. Thomas was given a health services request form and that his grievance was referred to the Central Kitchen on January 7, 2010.

26. Between January 7, 2010 and January 21, 2010, Mr. Thomas was not provided with a kosher diet.

27. Mr. Thomas appealed the January 15, 2010 response. Mr. Thomas' appeal was accepted. The appeal, dated March 8, 2010, directed Aramark to ensure that Mr. Thomas' request for a religious diet was addressed appropriately.

28. Upon information and belief, from January 7, 2010 to approximately mid-April of

2010, Mr. Thomas did not receive a kosher diet.

29. A response to Mr. Thomas' grievance, filed on February 21, 2010, stated that Mr. Thomas had exhausted the grievance procedures in his attempt to be provided a kosher diet. The response was dated March 3, 2010.

30. Beginning in October 2009, Plaintiff Shawn Morris filed two requests and two grievances seeking a kosher diet.

31. Mr. Morris received no response to his two requests. One of his grievances was processed as a request.

32. Upon information and belief, Mr. Morris was not assigned a grievance control number until his fourth filing on January 11, 2010.

33. The Jail's response, dated on or about January 28, 2010, stated that Mr. Morris should be provided with kosher meals and that the grievance would be forwarded to the Central Kitchen.

34. Mr. Morris appealed this response on February 4, 2010, and his appeal was accepted. The Appeal Board's response to the appeal was dated March 8, 2010. The response directed Aramark to ensure that Mr. Morris' request for a religious diet was addressed appropriately.

35. Plaintiff Darnell Cooper repeatedly requested a kosher diet in July and August 2009.

36. Upon information and belief, Mr. Cooper was told by Jail officials, including health officials, that his requests would be forwarded to the prison rabbi or the Central Kitchen. However, Mr. Cooper never consistently received kosher meals until approximately mid-April of 2010.

37. On several occasions, between December 11, 2009 and January 9, 2010, Plaintiffs have witnessed their names, crossed out with an "X", on a list of detainees to receive kosher meals. As a result, the Plaintiffs did not receive kosher meals on those respective dates.

38. As a result of Defendants' refusal to consistently provide Plaintiffs with a proper sustainable kosher meal that conforms to Islamic dietary law, Plaintiffs have been deprived of their right to practice their religion.

39. As a result of Defendants' refusal to consistently provide Plaintiffs with a proper sustainable meal that conforms to Islamic dietary law, Plaintiffs selectively ate only portions of the breakfast, lunch, and dinner they were served. Plaintiffs refrained from eating the meat on their plates and attempt to trade the portions of their meals that did not confirm to Islamic dietary codes with fellow detainees.

40. As a result of Defendants' refusal to consistently provide Plaintiffs with a proper sustainable meal that conforms to Islamic dietary law, Plaintiffs purchased, at their own expense, food from the commissary because large portions of their breakfast, lunch, and dinner were of a type, or were prepared in such a manner, as to offend Islamic dietary law.

41. Upon information and belief, since approximately mid-April, 2010, instead of providing Plaintiffs with meals containing kosher meat, the Jail has provided Plaintiffs with vegetarian meals on multiple occasions.

42. Based on the Jail's failure to consistently provide Plaintiffs with proper sustainable meals that conform to Islamic dietary law since November of 2009, the Plaintiffs' right to practice their religion has been substantially burdened.

43. Based on the Jail's failure to consistently provide Plaintiffs with proper sustainable meals that conform to Islamic dietary law since November of 2009, absent court-

ordered relief, the Plaintiffs fear that the Jail will continue its deliberate disregard to consistently provide Plaintiffs with a meal that conforms to Islamic dietary law three times a day.

44. Since November of 2009, it has been the policy, practice, custom and procedure of the Jail and of the Defendants to condone and approve, or to be deliberately indifferent to, the denial of proper sustainable meals that conform to Islamic dietary law; the denial of the Plaintiff's abilities to exercise their religion; and the denial of proper and prompt redress via the detainee grievance procedure established by the Jail.

45. Since November of 2009, Defendants Dart, Godinez and Martinez, who have policy making authority over conditions of confinement for detainees at the Jail, all have knowledge that Muslim Jail detainees, including Plaintiffs, face a pervasive risk of the violation of their constitutional rights through the denial of proper sustainable meals that conform to Islamic dietary law; the denial of their ability to engage their religious exercise; and the denial of proper and prompt redress via the detainee grievance procedure established by the Jail.

46. Since November of 2009, Defendant Dart has knowledge that his subordinates, including Defendants Godinez and Martinez, are not going to remedy, nor are they going to take any action to remedy, the pervasive risk of violating Muslim detainees', including Plaintiffs, constitutional rights through denial of proper sustainable meals that conform to Islamic dietary law; the denial of their ability to engage their religious exercise; and the denial of proper and prompt redress via the detainee grievance procedure established by the Jail. Defendant Dart deliberately failed to exercise his supervisory authority or direction to remedy or follow-up on, these known problems.

47. Since November of 2009, Defendant Godinez has knowledge that his subordinates, including Defendant Martinez, are not going to remedy, nor are they going to take

any action to remedy, the pervasive risk of violating Muslim detainees', including Plaintiffs, constitutional rights through the denial of proper sustainable meals that conform to Islamic dietary law; the denial of their ability to engage their religious exercise; and the denial of proper and prompt redress via the detainee grievance procedure established by the Jail. Defendant Godinez deliberately failed to exercise his supervisory authority or direction to remedy or follow-up on, these known problems.

48. Since November of 2009, Defendant Martinez has knowledge that her subordinates, are not going to remedy, nor are they going to take any action to remedy, the pervasive risk of violating Muslim detainees', including Plaintiffs, constitutional rights through the denial of proper sustainable meals that conform to Islamic dietary law; the denial of their ability to engage their religious exercise; and the denial of proper and prompt redress via the detainee grievance procedure established by the Jail. Defendant Martinez deliberately failed to exercise her supervisory authority or direction to remedy or follow-up on, these known problems.

49. All Defendants acted and purported to act under color of state law at all times relevant to the allegations set forth in this Complaint.

## COUNT I

### Free Exercise of Religion

50. Plaintiffs repeat and re-allege the preceding paragraphs as if fully alleged herein.

51. Plaintiffs hold sincere religious beliefs about Islamic dietary law.

52. Defendants’ refusal to consistently provide Plaintiffs with a proper sustainable diet that conforms to Islamic dietary law substantially burdens Plaintiffs’ ability to engage in

religious exercise.

53. Defendants' refusal to consistently provide Plaintiffs with a proper sustainable diet that conforms to Islamic dietary law is not reasonably related to any legitimate penological interest and is discriminatory.

54. Defendants' refusal to consistently provide Plaintiffs with a proper sustainable diet that conforms to Islamic dietary law violates the free exercise clause of the First Amendment to the United States Constitution.

**COUNT II**

**Religious Land Use and Institutionalized Persons Act**

55. Plaintiffs repeat and re-allege the preceding paragraphs as if fully alleged herein.

56. Plaintiffs seek to engage in a religious exercise that is substantially burdened by Defendants' refusal to consistently provide Plaintiffs with a proper sustainable diet that conforms to Islamic dietary law.

57. Defendants' refusal to consistently provide Plaintiffs with a proper sustainable diet that conforms to Islamic dietary law does not further any compelling governmental interest.

58. Defendants' refusal to consistently provide Plaintiffs with a proper sustainable diet that conforms to Islamic dietary law is not the least restrictive means of furthering any governmental interest.

59. Defendants' refusal to consistently provide Plaintiffs with a proper sustainable diet that conforms to Islamic dietary law violates the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc-1.

## COUNT III

### Illinois Religious Freedom Restoration Act

60. Plaintiffs repeat and re-allege the preceding paragraphs as if fully alleged herein.

61. Defendants' refusal to consistently provide Plaintiffs with a proper sustainable diet that conforms to Islamic dietary law places a substantial burden on the exercise of Plaintiffs' religious beliefs.

62. Defendants' refusal to consistently provide Plaintiffs with a proper sustainable diet that conforms to Islamic dietary law does not further any compelling governmental interest.

63. Defendants' refusal to consistently provide Plaintiffs with a proper sustainable diet that conforms to Islamic dietary law is not the least restrictive means of furthering any governmental interest.

64. Defendants' refusal to consistently provide Plaintiffs with a proper sustainable diet that conforms to Islamic dietary law violates the Illinois Religious Freedom Restoration Act, 775 ILCS 35/1 et seq..

65. Plaintiffs request trial by jury.

[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter an order:

(a) granting the following injunctive relief: that Cook County Jail provide a proper sustainable meal that conforms to Islamic dietary law three times a day to each Plaintiff for the duration of his detention at Cook County Jail, including during periods of segregation or isolation, if any;

(b) awarding costs and fees incurred by Plaintiffs in prosecuting their case pro se before this Court appointed counsel to represent Plaintiffs;

(c) awarding legal fees and related costs incurred by court-appointed counsel for Plaintiffs in prosecuting this case;

(d) granting Plaintiffs such additional relief as justice and equity may require.

Dated: July 16, 2010
Chicago, Illinois

Respectfully submitted,

/s/ Folarin S. Dosunmu
Folarin S. Dosunmu
155 N. Wacker Drive, Suite 2700
Chicago, Illinois 60606
Tel: (312) 407-0672
Fax: (312) 407-0411

*Court-Appointed Attorney for Plaintiffs Bryan Thomas, Shawn Morris, and Darnell Cooper*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing FIRST AMENDED COMPLAINT was served on July 16, 2010, via CM/ECF, to the following attorney of record:

Mary McClellan
Cook County States Attorney's Office
mmcclellan@cookcountygov.com

By:

/s/ Folarin S. Dosunmu

Folarin S. Dosunmu
155 N. Wacker Drive, Suite 2700
Chicago, Illinois 60606
Tel: (312) 407-0672
Fax: (312) 407-0411